---
Love *v.* The State.
---

## RICHARD LOVE *v.* THE STATE.

CRIMINAL LAW. *Jury. Misconduct of officer in charge of jury. Duty of.* Facts: After the evidence was closed, and the jury were in charge of an officer, they were seated on the side of a street, separated into squads of three or more, with persons standing around and passing by in the street. The officer was at a distance of twelve steps, with his back turned, engaged in conversation with other persons, and while so engaged a squad of the jury is approached and talked to. Though the officer and juror talked to, both make affidavits that the person who approached the jury was drunk and did not mention the case to the jury, yet the court say: "These facts make out a strong case of misconduct by the officer, and deserve to be punished by the courts, and we think this is a clear case of misconduct in the officer and the jury, and that the court erred in refusing a new trial."

Love v. The State.

Cases cited: Hines v. The State, 8 Hum., 597; McLain v. The State, 10 Yer., 241; Stone v. The State, 4 Hum., 38.

FROM ANDERSON.

Appeal from the Circuit Court. E. T. HALL, J.

ATTORNEY-GENERAL HEISKELL for the State.

No brief for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

Richard Love, colored, was indicted in the Circuit Court of Anderson county for the murder of Henry Love, his brother. The jury found him guilty of voluntary manslaughter, and sentenced him to the penitentiary for ten years. After a motion for a new trial was refused, he appealed to this court.

The error mainly relied on for reversal is, that the Circuit Judge refused to grant a new trial upon affidavits as to misconduct in the officer who had charge of the jury, and a portion of the jurors.

Two affiants state that after the adjournment of the court on the 8th of July, 1872, in the evening, they saw the jury in this case scattered along, in squads of from three to five, on the side of the street, extending over a distance of about thirty yards. This was after the evidence was closed and the jury respited and placed under the charge of an officer. The officer in charge of the jury was standing with his back towards the jurors, in a position he could not have seen any of the jury, engaged in conversa-

tion with a person or persons on the opposite side from where the jury was situated. At the same time a number of persons were standing around and passing in such numbers that affiants do not believe the officer could have seen all the jurors if he had been looking towards them, or could have been aware whether or not some of them were not communicating with persons not on the jury. The officer being about twelve steps from the end of the line of jurors nearest to him, they saw a man named Adkinson talking and gesticulating to that squad of the jury most distant from the officer. Affiants could not hear the conversation, but could distinctly see from that gesticulation that some sort of conversation was going on between the jurors and Adkinson.

The counter affidavit of the officer states that he was about five steps from the nearest jurors, and was at all times in sight of the jury, each and all of them; that on the evening referred to the jury was scattered along about fourteen yards, and that while so seated, one Adkinson, who was drinking, came to the end of the line farthest from him and commenced talking to part of the jury, which talking he did not understand; but as soon as he saw Adkinson he went and told him he was talking to a jury, and Adkinson begged pardon and went away immediately. He states that Josiah Chapman was the only juror with whom Adkinson talked. Chapman was examined, and stated that one Adkinson came along, intoxicated, and spoke to affiant with another juror standing by. Affiant told Adkinson that they belonged to a jury, where-

Love *v.* The State.

upon he said he did not want to bother a jury, and left. He says there was nothing said about the case or about the defendant Love. Three other jurors made affidavits as to the general good conduct of the jury, but having no reference to the specific charge of misconduct in conversing with Adkinson.

In the cases of *McLain* v. *The State,* 10 Yer., 241; *Stone* v. *The State,* 4 Hum., 38, and *Hines* v. *The State,* 8 Hum., 602, it was said that "to insure to the accused the full benefit of the judgment of his peers, it is absolutely necessary that the minds of the jurors should not have prejudiced his case; that no impression should be made except what is drawn from the testimony given in court, to operate upon them; and that to secure this, they must not be permitted to separate and mingle with the balance of the community, without explanation, showing that they had not been tampered with, and that it is not necessary for the prisoner to prove that they had been."

We have, in the present case, evidence by two witnesses that the jury was seated on the side of a street, separated into squads of three or more, with persons standing around and passing about in the street, the officer at a distance of twelve steps with his back turned, engaged in conversation with other persons, and while so engaged a squad of the jury is approached and talked to. These facts make out a strong case of misconduct on the part of the officer, which deserved to be punished by the court. Nor does the explanation of the officer or of the jurors show that no improper influence was exerted, either

by Adkinson, who conversed with a portion of the jurors, or by others standing around and passing about them. The situation of the jury was such that they might well receive impressions from those around them, nor could the officer, standing where he was and engaged as he was, know whether they had been tampered with or not; nor does it appear, except by the affidavit of one of the jurors talked to, that the trial was not the subject of Adkinson's conversation.

In the case of *Hines* v. *The State,* 8 Hum., 597, it was held that the explanation of the juror alone would not be sufficient to rebut the presumption arising from the simple fact of separation. Here we have nothing but the explanation by the officer, which is contradicted by the affidavits of two disinterested witnesses.

We think it is a clear case of misconduct in the officer and the jury, and that the court erred in refusing a new trial.

Judgment reversed.